UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYNNE LOESCHER, | No. 2:19-cv-1984-KJM-KJN |
| Plaintiff, | |
| v. | ORDER |
| COUNTY OF PLUMAS, et al., | |
| Defendants. | |

Defendants County of Plumas ("County") and Plumas County Sheriff Greg Hagwood ("Sheriff Hagwood") move to dismiss plaintiff Lynne Loescher's claims. Mot. to Dismiss ("MTD"), ECF No. 16, at 1. Plaintiff filed an opposition. Opp'n, ECF No. 24. Defendants replied. Reply, ECF No. 26. The court heard oral argument, held by videoconference, on June 26, 2020, with Larry Baumbach appearing for plaintiff, Shanan Hewitt appearing for the County and Sheriff Hagwood, and James Walter appearing for defendant California Highway Patrol Officer Macloud Lutney ("Officer Luntey"). Hr'g Min., ECF No. 27. For the reasons below, the court GRANTS defendants' motion to dismiss.

/////

/////

/////

1

I.     BACKGROUND

On or about August 30, 2018, plaintiff operated a vehicle on California State Route 70 near the Greenville exit. First Am. Compl. ("FAC") ¶ 7, ECF No. 13. On that night, plaintiff stopped "in response to the evident authority" of defendant Officer Luntey. *Id.* After she stopped, plaintiff alleges Officer Luntey drove alongside her vehicle and asked whether she was following anyone; plaintiff allegedly responded she was following her husband. *Id.* ¶ 8. Officer Luntey stated he stopped plaintiff's husband's vehicle because he had been driving "erratically" and also claimed he stopped plaintiff's vehicle "because she was driving 'iffy.'" *Id.*

In response to Officer Luntey's order to submit to a search "without probable cause," plaintiff provided him with her license and vehicle registration. *Id.* Plaintiff alleges Officer Luntey then conducted the search "in an abusive manner" and "caused" plaintiff to take a breathalyzer test to measure the presence of alcohol in her system. *Id.* Plaintiff claims she "registered below the lawful limit" and yet Officer Luntey decided to transport her in his vehicle to the Sherriff's station in Quincy, California, where she would take another breathalyzer test. *Id.*

At the station, plaintiff performed another breathalyzer test, which also indicated she was not under the influence of alcohol. *Id.* ("Upon forcing plaintiff to submit to a field alcohol screening test which registered below the lawful limit [. . .] he nevertheless stated that he would take her into custody wherein she would repeat the breath test."). As a result of this test, plaintiff avers the officers did not have probable cause to detain her any longer, but Officer Luntey directed other officers to book her on "'open' charges," submit her to fingerprinting, and photograph her. *Id.* ¶ 9. Plaintiff then allegedly demanded "to be brought before a committing magistrate and notified of the criminal charges for which she was being held and allowed to post bail"; she claims defendants ignored her demands. *Id.* ¶ 10. For eight hours overnight, she remained in a holding cell with "unusable facilities," without toilet paper, and with a floor covered "with urine and feces," which caused her "severe emotional pain and suffering." *Id.*

Following her release, plaintiff was ordered to appear in court, so she hired counsel, but never faced any charges from this arrest and incarceration. *Id.* ¶ 12. She also sought and obtained medical treatment and hospital care, for which she incurred reasonable expenses;

2

she expects to require further medical expenses for the injuries sustained as a result of unlawful arrest and imprisonment. *Id.*

On September 30, 2019, plaintiff filed suit against defendants. Compl., ECF No. 1. On December 31, 2019, the parties stipulated to granting plaintiff leave to file a first amended complaint. Min. Order, ECF No. 11. On January 3, 2020, plaintiff filed the amended complaint. *See generally* FAC. She names as defendants the County, Sheriff Hagwood, Officer Luntey and Does 1 through 50, who were allegedly involved in her booking and incarceration.[1] FAC ¶ 6. Plaintiff alleges the County is a municipal corporation and governmental subdivision of the State of California responsible for the described conduct, Sheriff Hagwood is responsible for administering the jail and for participating and associating with Officer Luntey, and Officer Luntey is an employee of the State of California. *Id.*

Plaintiff brings three claims in the operative complaint: (1) municipal and individual liability for violation of Fourth, Fourteenth and Sixth Amendment rights under 42 U.S.C. § 1983, *id.* ¶¶ 7–13; (2) battery, *id.* ¶¶ 14–15; and (3) negligent infliction of emotional distress, *id.* ¶¶ 16–17. Plaintiff demands declaratory judgment, as well as general and punitive damages. *Id.* at 6. Defendants challenge all claims against the County and Sheriff Hagwood in the pending motion. MTD at 1.

II.     LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." A court may dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

---

[1] If defendants' identities are unknown when the complaint is filed, plaintiff has an opportunity through discovery to identify them. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). But the court will dismiss such unnamed defendants if discovery clearly would not uncover their identities or if the complaint would clearly be dismissed on other grounds. *Id.* The federal rules also provide for dismissing unnamed defendants that, absent good cause, are not served within ninety days of the complaint. Fed. R. Civ. P. 4(m).

Although a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to survive a motion to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).  Determining whether a complaint will survive a motion to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  Ultimately, the inquiry focuses on the interplay between the factual allegations of the complaint and the dispositive issues of law in the action. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

In making this context-specific evaluation, this court must construe the complaint in the light most favorable to the plaintiff and accept as true the factual allegations of the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007).  This rule does not apply to "'a legal conclusion couched as a factual allegation,'" *Papasan v. Allain*, 478 U.S. 265, 286 (1986) quoted in *Twombly*, 550 U.S. at 555, nor to "allegations that contradict matters properly subject to judicial notice" or to material attached to or incorporated by reference into the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988–89 (9th Cir. 2001).  A court's consideration of documents attached to a complaint or incorporated by reference or matter of judicial notice will not convert a motion to dismiss into a motion for summary judgment.  *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003); *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *compare Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) (noting that even though court may look beyond pleadings on motion to dismiss, generally court is limited to face of the complaint on 12(b)(6) motion).

/////

/////

/////

4

1  III.     DISCUSSION

2          A.     Section 1983 (First Claim): Plumas County

3          Defendants argue the Fourth, Fourteenth and Sixth Amendment claims brought under Section 1983 against the County fail because plaintiff's complaint lacks the necessary "factual allegations" to demonstrate an "unconstitutional custom, policy, or practice" from the County.  MTD at 3–8.

          Section 1983 provides that "[e]very person who, under color of [law] . . . subjects, or causes to be subjected, any . . . person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and the laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983.  Under this section, municipalities and other local governments, including counties are considered "persons."  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).

          Under *Monell*, counties "are responsible only for their *own* illegal acts," *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (emphasis in original) (citations, internal quotation marks omitted).  "They are not vicariously liable . . . for their employees' actions." *Id.* (citations omitted).  To successfully establish *Monell* liability, a plaintiff must show "'(1) that [he or she] possessed a constitutional right of which [he or she] was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation.'"  *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (quoting *Plumeau v. Sch. Dist. No. 40 Cty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997)).  "Official . . . policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."  *Connick*, 563 U.S. at 61 (citations omitted). "[A] custom or practice can be inferred from widespread practices or evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded."  *Hunter v. Cty. of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011).  "[E]vidence of inaction—specifically failure to investigate and discipline employees in the face of widespread constitutional violations—can support an inference that an unconstitutional custom or practice has been unofficially adopted by a municipality."  *Id.* at 1234 n.8 (emphasis omitted).

5

Prior to the Supreme Court decisions in *Twombly* and *Iqbal*, *supra*, a claim for county liability could "withstand a motion to dismiss 'even if . . . based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice.'" *Karim-Panahi v. L.A. Police Dept.*, 839 F.2d 621, 624 (9th Cir. 1988) (citing *Shah v. Cty. of L.A. Intelligence & Coordination Unit*, 797 F.2d 743, 747 (9th Cir. 1986)). In light of *Twombly* and *Iqbal*, the Ninth Circuit now has articulated a two-part rule to govern evaluation of allegations in a complaint or counterclaim:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2012). Thus, the court considers a motion to dismiss a claim of municipal liability under a heightened pleading standard. *See Young v. City of Visalia*, 687 F. Supp. 2d 1141, 1149 (E.D. Cal. 2009) ("*Iqbal* has made clear that conclusory, 'threadbare' allegations that merely recite the elements of a cause of action will not defeat a motion to dismiss . . . . In light of *Iqbal*, it would seem that the prior Ninth Circuit pleading standard for *Monell* claims (i.e. 'bare allegations') is no longer viable.").

          1.      <u>Fourth Amendment Claim</u>

Defendants argue plaintiff has failed to identify a County policy or practice as the basis for holding defendants liable for plaintiff's alleged "unlawful detention and imprisonment" and deprivation of her right to be "secure in her person and affects against unreasonable search and seizure." MTD at 4–5 (citing FAC ¶¶ 10, 12–13). Plaintiff disagrees and asserts the County, as opposed to the State of California, sets policies that could lead to the Fourth Amendment violations here. Opp'n at 2, 4.

"A county is subject to section 1983 liability for such suits if its policies, whether set by the government's lawmakers 'or by those whose edicts or acts that may fairly be said to

6

1  represent official policy,' caused the particular constitutional violation at issue." *Streit v. Cty. of*
2  *Los Angeles*, 236 F.3d 552, 562 (9th Cir. 2001) (quoting *Monell*, 436 U.S. at 694).  To determine
3  this issue, courts "must consider the state's legal characterization of the government entities
4  which are parties to these actions, federal law provides the rules of decision in section 1983
5  actions."  *Streit*, 236 F.3d at 562 (citing *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 430
6  n.5 (1997)); *see also McMillian v. Monroe Cty.*, 520 U.S. 781, 793 (1997) (concluding Alabama
7  Constitution, Codes and case law provide that "Alabama sheriffs, when executing their law
8  enforcement duties, represent the State of Alabama, not their counties.").  In California, state law
9  provides "that 'the County, not the state, oversees the local jails, and the [Sheriff], as the
10 administrator of those jails, acts for the County.'"  *Cortez v. Cty. of Los Angeles*, 294 F.3d 1186,
11 1190 (9th Cir. 2002) (quoting *Streit*, 236 F.3d at 562).  As *Cortez* recognizes, under the California
12 Constitution and other governing codes, counties, as opposed to the state, hold responsibility for
13 managing local jails through a Sheriff and the Sheriff's Department.  *Streit*, 236 F.3d at 561–62
14 (citing Cal. Const. art. XI, § 1 (b); Cal. Gov't Code § 25303 ("granting the county boards of
15 supervisors broad fiscal and administrative powers for the management of the individual county
16 jails so long as the boards do not 'obstruct the investigative function of the sheriff of the
17 county.'"); Cal. Gov't Code § 815.2 ("Under California law, monetary damages for section 1983
18 claims are paid by the County and not the state.")).

19         Defendants' argument that only state policy, as opposed to county policy, can be
20 responsible for the alleged constitutional violations here is unavailing in light of the Circuit
21 precedent holding counties responsible for policies within county jails in California, upon an
22 analysis of the applicable California government codes.  *See Streit*, 236 F.3d at 556 (holding
23 County of Los Angeles is subject to section 1983 liability when plaintiffs "were detaining in
24 county jails after all legal justifications for their seizure and detention ended.").  That said,
25 plaintiff's claim for relief does not fall within the ambit of Section 1983 for her alleged Fourth
26 Amendment violations, as explained below.

27         To support her claim, plaintiff pleads only the allegedly unconstitutional searches
28 she experienced on the highway and at the County jail.  FAC ¶¶ 8–9.  Her complaint contains a

1    single, conclusory sentence referencing the "unconstitutional custom, policy or practice" that she
2    says makes the County potentially liable. *Id.* ¶ 11 ("Pursuant to the custom, policy and practice
3    of defendant County of Plumas, plaintiff was not released from custody once it was determined
4    she was not under the influence but was jailed for eight hours before being released from
5    custody."). Plaintiff does not further spell out which "unconstitutional custom, policy or
6    practice" led to the alleged violations. In opposition, plaintiff acknowledges her pleading
7    deficiencies, but characterizes defendants' arguments as a "desire [for] repetitive assertion of
8    those words which if the Court deems necessary can be cured by amendment." Opp'n at 24.

9    But again, pleading standards post-*Twombly* and *Iqbal* require more than mere
10   "repetitive assertion" of the magic words associated with a given claim. Plaintiff must allege
11   facts sufficient to demonstrate she has a plausible claim for relief from an identifiable
12   "unconstitutional custom, policy or practice." Satisfactory factual allegations, for example, could
13   describe "widespread practices or evidence of repeated constitutional violations." *Hunter*,
14   652 F.3d at 1233. Here, plaintiff does not allege other instances of similar unconstitutional
15   actions, any County policies mandating unlawful searches and detention, or any evidence of the
16   County's failure to investigate or discipline anyone in the face of similar allegations. Thus there
17   is no basis for the court to find her claim properly pled by inferring an unconstitutional policy or
18   custom from multiple incidents of prior, similar conduct, as opposed to the one incident involving
19   plaintiff here. *See Estate of Alejandro Sanchez v. Cty. of Stanislaus*, No. 1:18-CV-0977-DAD-
20   BAM, 2019 WL 1745868, at *4 (E.D. Cal. Apr. 18, 2019) (plaintiffs' complaint includes
21   "sufficient factual allegations" to plausibly allege existence of policy or custom of excessive force
22   when plaintiffs pointed to at least three prior cases involving similar facts and eventual
23   settlement); *see also Lemus v. Cty. of Merced*, No. 1:15-cv-00359-MCE-EPG, 2016 WL 2930523
24   at *4 (E.D. Cal. May 19, 2016), *aff'd*, 711 F. App'x 859 (9th Cir. 2017) ("[W]here more than a
25   few incidents are alleged, the determination appears to require a fully-developed factual record.").
26   Based on her current pleading, plaintiff has not demonstrated she is entitled to move forward to
27   seek relief on her Fourth Amendment *Monell* claim.
28   /////

The court GRANTS defendants' motion to dismiss plaintiff's Fourth Amendment claim, with leave to amend, if possible subject to Federal Rule of Civil Procedure 11. *See Ascon Props. Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) (" Under Federal Rule of Civil Procedure 15(a)(2), "The court should freely give leave [to amend pleadings] when justice so requires," and the Ninth Circuit has "stressed Rule 15's policy of favoring amendments.")

### 2. Fourteenth Amendment Claim

Defendants attack plaintiff's Fourteenth Amendment claims in arguing: (1) state policy, rather than county policy, mandated plaintiff's overnight stay in jail; (2) alternatively, plaintiff's detention did not meet the "objective reasonableness" standard for due process claims; (3) the length of plaintiff's detention without a hearing did not violate her due process rights; and (4) the conditions of her confinement did not violate due process. MTD at 6–7. In her opposition, plaintiff simply recites the applicable legal standards for due process claims of pretrial detainees. Opp'n at 3 (citing *Jones v. Blanas*, 393 F.3d 918, 931 (9th Cir. 2004) ("'[T]he more protective Fourteenth Amendment's standard applies to condition of confinement when detainees … have not been convicted' of a crime.") (citations omitted)).

As with her Fourth Amendment claim, plaintiff's Fourteenth Amendment due process claims represent nothing more than "bare allegations" that the actions of individual officers followed the County's "unconstitutional custom, policy or practice." Plaintiff's Fourteenth Amendment claim consists entirely of summary factual allegations without the detail required to achieve plausibility. *See* FAC ¶ 11 ("Pursuant to the custom, policy and practice of defendant County of Plumas, plaintiff was not released from custody once it was determined she was not under the influence but was jailed for eight hours before being released from custody."). Specifically, plaintiff alleges neither a specific County policy mandating unconstitutional treatment of pretrial detainees nor "repeated violations" or a "widespread practice."

The court GRANTS defendants' motion to dismiss plaintiff's Fourteenth Amendment claim, with leave to amend.

/////

/////

9

### 3. Sixth Amendment Claim

The court notes plaintiff has not responded to defendants' arguments that plaintiff's Sixth Amendment claim fails because plaintiff was never charged with a crime. Opp'n at 5; Reply at 3. Accordingly, the motion to dismiss is GRANTED as to this claim, but without leave to amend given that plaintiff's failure to respond to defendants' arguments signals she is not able to amend.

### 4. Conclusion

The court GRANTS defendants' motion to dismiss plaintiff's Fourth and Fourteenth Amendment claims within her first claim as currently alleged against the County, with leave to amend. The court also GRANTS defendants' motion to dismiss plaintiff's Sixth Amendment claim within her first cause of action as alleged against the County, without leave to amend.

## B. Section 1983 (First Claim): Sheriff Hagwood

Defendants argue the court should dismiss plaintiff's claims against Sheriff Hagwood because plaintiff "appears to" sue Sheriff Hagwood in his individual as opposed to his official capacity and does not allege the necessary facts to do so. MTD at 8; Reply at 4. Even if plaintiff named Sheriff Hagwood in his official capacity, defendants maintain the claims would still fail because Sheriff Hagwood was enforcing state law. MTD at 9 (quoting Cal. Penal Code § 4015(a)). In opposition, plaintiff contends she has sued Sheriff Hagwood in both his individual and official capacities. Opp'n at 2. The court analyzes defendant's motion regarding Sheriff Hagwood, considering both the potential for individual capacity and official capacity claims.

### 1. Individual Capacity

Defendants assert plaintiff has not pled Sheriff Hagwood exhibited the personal participation necessary to impose supervisory liability on him in his individual capacity. MTD at 8–9. Defendants note plaintiff makes no particularized factual allegations about Sheriff Hagwood; plaintiff does not allege the Sheriff was present at the jail or that he communicated with plaintiff on the night in question. Defendants therefore assert plaintiff has not shown the personal participation necessary to impose Section 1983 liability. MTD at 8–9.

"A supervisory official is liable under § 1983 so long as 'there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Rodriguez v. Cty. of L.A.*, 891 F.3d 776, 798 (citing *Keates v. Koile*, 883 F.3d 1228, 1242–43 (9th Cir. 2018)). A causal connection is established "by setting in motion a series of acts by others or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." *Id.* (alteration in original) (quoting *Starr v. Baca*, 652 F.3d 1202, 1207–08 (9th Cir. 2011)). Therefore, "[a] supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Starr*, 652 F.3d at 1208.

Defendants are correct the complaint is devoid of factual allegations that Sheriff Hagwood was personally involved in, knew of or refused to interject himself in the actions of his subordinate officers in a way that caused the infringement of plaintiff's constitutional rights. Plaintiff references only obliquely "the acts of the individual of defendants [sic]" and alleges these acts were "performed knowingly, intentionally, and maliciously," but does not mention any specific deeds attributable to Sheriff Hagwood. FAC ¶ 13. Rather, plaintiff pleads that Officer Luntey or other "personnel in the employ of the defendant Sheriff's Department of Plumas County" carried out the alleged unconstitutional actions, including the search of plaintiff, booking her at the jail or her overnight incarceration. *Id.* ¶¶ 8–10. Plaintiff does not indicate Sheriff Hagwood was even present for these events, nor plead any causal connection between Sheriff Hagwood's alleged "conduct" and the constitutional violations. *Id.* ¶ 13. Plaintiff also does not identify any policy or decision Sheriff Hagwood made that led to the violations. As a result, plaintiff's allegations here as well lack the factual support required for a viable supervisory liability claim at the 12(b)(6) stage. *See Cortez*, 294 F.3d at 1190 (plaintiff could bring Section 1983 claim against sheriff for "Sheriff's decision to place Avalos in the gang unit [] made pursuant to his policy of segregating gang members from other inmates."); *Quezada v. McDowell*,

11

No. 5:18-CV-00251-VBF-MAA, 2019 WL 3806406, at *7 (C.D. Cal. July 10, 2019) *report and recommendation adopted*, No. EDCV 18-00251-VBF-MAA, 2019 WL 3802190 (C.D. Cal. Aug. 12, 2019) (denying defendants' motion to dismiss plaintiff's supervisory liability claim where plaintiff alleged he repeatedly notified supervising defendant about subordinate defendants' "systematic retaliations against Plaintiff, yet [the supervisor] failed to act."); *see also Reed v. Paramo*, No. 18-CV-361 JLS (LL), 2019 WL 398339, at *10 (S.D. Cal. Jan. 31, 2019) (finding plaintiff sufficiently pled supervisory liability claim where plaintiff and others had lodged complaints against subordinate defendant's retaliatory behavior, and defendant's refusal to act on complaints created policy of allowing retaliatory conduct by its officers).

Even viewing the allegations in plaintiff's favor, as the court must, the complaint contains nothing more than bare recitals and conclusory allegations regarding Sheriff Hagwood's knowledge, involvement or connection to the underlying conduct.  Accordingly, the court GRANTS defendants' motion to dismiss plaintiff's claim against Sheriff Hagwood, in his individual capacity, but with leave to amend if plaintiff is able to do so.

### 2. Official Capacity

Defendants argue plaintiff's claims against Sheriff Hagwood in his official capacity "would be tantamount to an impermissible suit against the State." MTD at 8–9 (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)).  In response, plaintiff argues Sheriff Hagwood is not cloaked with state immunity because Sheriffs are county, rather than state, actors.  Opp'n at 5 (citing *Streit*, 236 F.3d at 561; *Cortez*, 294 F.3d at 1191).

The California Constitution designates sheriffs as county officers.  *See* Cal. Const. art. XI, § 1(b) ("The Legislature shall provide for […] an elected county sheriff.").  Various state provisions related to the elections, office locations, and liability of counties "lead inexorably to the conclusions" sheriffs and sheriffs' departments are "tied to the County in its political, administrative, and fiscal capacities." *Streit*, 236 F.3d at 562.  As noted above and relevant here as well, "California sheriffs are final policymakers for the county not only when managing the local jail, but also when performing some law enforcement functions." *Cortez*, 294 F.3d at 1192 (citing *Brewster v. Shasta Cty.*, 275 F.3d 803, 808 (holding Sheriffs are county officials when

1   investigating a case involving the investigation of a murder and sexual assault); *Bishop Paiute*
2   *Tribe v. Cty of Inyo*, 291 F.3d 549, 564 (9th Cir. 2002) (analyzing California law to find District
3   Attorney and Sheriff "acted as county officers in obtaining and executing a search warrant against
4   the Tribe.") *judgment vacated by Inyo Cty., Cal. v. Paiute-Shoshone Indians of the Bishop*
5   *Community of the Bishop Colony*, 538 U.S. 701 (2003)).

6           The court is not persuaded by defendants' argument.  As discussed above, and as
7   provided by the state constitution, sheriffs are county officers in California.  Defendants
8   misconstrue a state statute creating a county official's position, such as a Sheriff, as anointing
9   these officials with the status of state officials.  MTD at 9; *see also Brewster*, 275 F.3d at 811
10  (while California law "imposes on sheriffs the duty to 'preserve peace' [….] arrest 'all persons
11  who attempt to commit or who have committed a public offense,'" sheriffs are county officials
12  when investigating crime, especially because "in California, county boards of supervisors have
13  authority to supervise the conduct of sheriffs") (quoting Cal. Gov't Code §§ 26600, 26601).
14  Moreover, Sheriff Hagwood's alleged enforcement of a state statute, Cal. Penal Code § 4015(a),
15  which orders "[t]he sheriff shall receive all persons committed to jail by competent authority"
16  does not mean any suits against Sheriff Hagwood for allegedly enforcing the statute "would be
17  tantamount to an impermissible suit against the state."  MTD at 9.  In making this argument,
18  defendants do not consider the subsequent sentences in that statute:  "[t]he board of supervisors
19  shall provide the sheriff with necessary food, clothing, and bedding, for those prisoners" and the
20  "expenses thereof shall be paid out of the county treasury."  Cal. Pen. Code § 4015(a).  The Ninth
21  Circuit has relied on other California statutes, which similar to California Penal Code section
22  4015(a) describe the county supervisors' role in overseeing jails, to reason that counties are liable
23  for the actions of sheriffs.  *Streit*, 236 F.3d at 561–62 (analyzing how Cal. Gov't Code § 2503
24  grants "the county boards of supervisors broad fiscal and administrative powers for the
25  management of the individual county jails," which shows "the counties hold the ultimate power
26  over the jails.").

27          At the same time, when, as here, "both a municipal officer and a local government
28  entity are named, and the officer is named only in an official capacity, the court may dismiss the

officer as a redundant defendant." *Ctr. for Bio-Ethical Reform, Inc. v. L.A. Cty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008); *see also Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). The court sees no reason to diverge from the principle articulated in these cases. *See Venegas v. Sniff*, No. 5:18-CV-02293-JLS (SHK), 2020 WL 2574947, at *17 (C.D. Cal. Apr. 9, 2020) (dismissing official-capacity claims against individual defendants, including sheriff, as "duplicative and redundant"), *report and recommendation adopted*, No. 5:18-CV-02293-JLS (SHK), 2020 WL 2572458 (C.D. Cal. May 21, 2020).

The court GRANTS defendants' motion to dismiss plaintiff's claims against Sheriff Hagwood in his official capacity, without leave to amend.

C. <u>State Law Claims</u>

1. <u>Battery (Second Claim): Plumas County and Sheriff Hagwood</u>

In opposition, plaintiff did not address defendants' argument that she failed to state a battery claim; during oral argument, plaintiff confirmed she waives this claim. Opp'n at 6; *see also* MTD at 9–10.

The court GRANTS defendants' motion to dismiss plaintiff's battery claim against the County and Sheriff Hagwood, without leave to amend.

2. <u>Negligent Infliction of Emotional Distress (Third Cause of Action): Plumas County and Sheriff Hagwood</u>

Plaintiff also did not discuss defendants' arguments related to her negligent infliction of emotional distress (NIED) claim in her opposition; during oral argument, she confirmed she waives this claim. Opp'n at 6; *see also* MTD at 11–12.

The court GRANTS defendants' motion to dismiss plaintiff's NIED claim against the County and Sheriff Hagwood, without leave to amend.

/////

/////

       3.    <u>Punitive Damages: Sheriff Hagwood</u>

As with her battery and NIED claims, plaintiff does not address defendants' argument that she has not alleged facts to show she is entitled to punitive damages from Sheriff Hagwood, MTD at 12, although counsel did not expressly waive punitive damages at hearing.

The court GRANTS defendants' motion to dismiss plaintiff's claim for punitive damages, as alleged against Sheriff Hagwood; in the absence of any representation by plaintiff suggesting she can amend, this dismissal is without leave to amend.

IV.    <u>CONCLUSION</u>

For the foregoing reasons, the court orders as follows:

1. Defendants' Motion to Dismiss plaintiff's first claim, as alleged against the County is GRANTED, with leave to amend;
2. Defendants' Motion to Dismiss plaintiff's first cause of action, as alleged against Sheriff Hagwood in his individual capacity is GRANTED, with leave to amend;
3. Defendants' Motion to Dismiss plaintiff's first cause of action, as alleged against Sheriff Hagwood in his official capacity is GRANTED, without leave to amend;
4. Defendants' Motion to Dismiss plaintiff's battery claim as alleged against the County and Sheriff Hagwood is GRANTED, without leave to amend;
5. Defendants' Motion to Dismiss plaintiff's NIED claim as alleged against the County and Sheriff Hagwood is GRANTED, without leave to amend;
6. Defendants' Motion to Dismiss plaintiff's claim for punitive damages as alleged against Sheriff Hagwood is GRANTED, without leave to amend.

Plaintiff shall have 21 days from the date of this order to file any amended complaint.

/////

/////

/////

This order resolves ECF No. 16.

IT IS SO ORDERED.

DATED: September 18, 2020.

_____
CHIEF UNITED STATES DISTRICT JUDGE