UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

LYNNE LOESCHER,

    Plaintiff,

v.

MACLOUD LUNTEY and DOES 1–50,

    Defendants.

No. 2:19-cv-01984-DJC-CSK

ORDER

Defendant, a California Highway Patrol officer, moves for summary judgment as to Plaintiff's sole claim against him for violations of her civil rights under the Fourth, Eighth, and Fourteenth Amendments stemming from her arrest for driving while under the influence.  Defendant argues that Plaintiff's civil rights were not violated because reasonable suspicion existed for the stop of Plaintiff's vehicle for committing traffic infractions and the attendant detention of Plaintiff while Defendant investigated whether Plaintiff was driving under the influence, and that probable cause existed for the arrest of Plaintiff for driving under the influence.  Notably, Defendant points to a video of the traffic stop which he argues establishes Plaintiff was weaving in her lane and touching or crossing the double yellow line on the highway for approximately two minutes before she was pulled over, supporting Defendant's reasonable suspicion.

Having considered the Parties' briefings and arguments, the Court finds that the video does not clearly demonstrate Plaintiff was committing traffic infractions. Accordingly, the Court will DENY summary judgment as to Plaintiff's Fourth

1

Amendment claim.  However, as discussed at the hearing, Plaintiff has failed to adequately plead Eighth and Fourteenth Amendment claims against Defendant.  Accordingly, the Court will GRANT summary judgment on Plaintiff's Eighth and Fourteenth Amendment claims.

## BACKGROUND

On August 30, 2018, Defendant Officer MaCloud Luntey ("Officer Luntey") of the California Highway Patrol ("CHP") was on duty patrolling Highway 89.  (Defendant's Statement of Undisputed Facts ("Def.'s SOF") (ECF No. 62-4) ¶ 1.)  Officer Luntey began following Plaintiff Lynne Loescher's vehicle and states he saw Plaintiff's vehicle weave to touch or cross the highway's double yellow line on multiple occasions over a two-minute period.  (*Id.* ¶¶ 2–3; Walter Decl., Ex. A ("MVARS[1] Video") (ECF No. 67-2) at 00:01–02:00.)  Officer Luntey pulled Plaintiff over based on her pattern of driving.  (Def.'s SOF ¶ 4.)

Once Plaintiff pulled over, Officer Luntey approached her vehicle, and began interviewing her at approximately 8:22 P.M.  (Luntey Dep. (ECF No. 59-3) at 28:16–18, 31:4–33:8.)  Officer Luntey smelled the odor of alcohol as Plaintiff was speaking with him.  (Def.'s SOF ¶ 5.)  Officer Luntey also noticed that Plaintiff's eyes appeared red and watery, and that her speech sounded slurred.  (*Id.* ¶ 6.)  After informing Plaintiff why he pulled her over, Officer Luntey asked Plaintiff to step outside her vehicle to conduct a driving under the influence investigation.  (Luntey Dep. at 33:6–8.)

Officer Luntey performed three field sobriety tests once Plaintiff stepped out of her vehicle: a Horizontal Gaze Nystagmus test, a Modified Romberg's test, and a Preliminary Alcohol Screening test.  (Def.'s SOF ¶ 7.)  The Horizontal Gaze Nystagmus test revealed that Plaintiff's eyes lacked smooth pursuit, and Officer Luntey noticed distinct and sustained nystagmus, or an involuntary ticking of the eye, at maximum

---

[1] MVARS stands for Mobile Video Audio Recording System.

deviation, both of which are signs of impairment.[2] (*Id.* ¶ 8.) The Modified Romberg's test involves the subject tilting their head backwards, closing their eyes, and then estimating when 30 seconds has passed before telling the officer to stop. (Luntey Dep. at 40:9–13.) When Officer Luntey performed this test, Plaintiff underestimated the time by 5 seconds, which he considered to be reasonably close. (Def.'s SOF ¶ 9; Luntey Dep. at 40:17–41:1.) Finally, Officer Luntey performed three Preliminary Alcohol Screening tests using a hand-held testing device which read Plaintiff's blood alcohol content as either .077 or .078. (Def.'s SOF ¶ 11.) Based on the totality of Plaintiff's performances on the field sobriety tests, and Officer Luntey's observations of Plaintiff, Officer Luntey arrested Plaintiff for driving under the influence. (*Id.* ¶ 12.)

While speaking to Officer Luntey, Plaintiff admitted she had had at least one alcoholic drink, but told Officer Luntey she may have had two because the drink she consumed was larger than a standard drink. (*Id.* ¶¶ 13–14.) Plaintiff also admitted to taking several prescription medications earlier in the day. (*Id.* ¶ 15.) One of these medications was Effexor, which Plaintiff testified she typically does not mix with alcoholic beverages because it affects her ability to tell the effects of alcohol on her. (Loescher Dep. (ECF No. 59-2) at 32:6–20.)

Following her arrest, Officer Luntey drove Plaintiff to a CHP office where she underwent two breathalyzer tests which both revealed that Plaintiff's blood concentration levels were .05. (Def.'s SOF ¶ 16; Luntey Dep. at 61:5-19, 63:7-9, 64:4–65:14.) Officer Luntey conferred with his supervisor following the results of these tests. (Luntey Dep. at 66:8–68:9.) Based on Officer Luntey's observations of Plaintiff's driving and her performance on the field sobriety tests, Officer Luntey determined

---

[2] Plaintiff told Officer Luntey that she has Horner's Syndrome, which causes her pupils to be unequal and affected by the nerves in her eyes. (Plaintiff's Statement of Undisputed Facts ("Pl.'s SOF") (ECF No. 67-1) ¶ 5.)

3

that Plaintiff had been driving under the influence and arrested her for violating California Vehicle Code § 23152(a).³ (Def.'s SOF ¶ 17.)

Officer Luntey drove Plaintiff to the Plumas County Jail ("Jail") and released her to the custody of the Plumas County Sheriff. (Luntey Dep. at 65:8–66:11, 68:10–24.) Plaintiff spent the night in a holding cell at the Jail and was released at 6:30 am on August 31, 2018. (Loescher Dep. at 41:5–42:5). Plaintiff was not prosecuted for violating section 23152. (Loescher Dep. at 51:4–18).

Plaintiff filed her operative Second Amended Complaint ("SAC") on October 30, 2020, against Defendants the County of Plumas, Sheriff Greg Hagwood, Officer Luntey, and Does 1–50 ("Doe Defendants"). (ECF No. 35.) The SAC alleges two causes of action: (1) violations of Plaintiff's civil rights related to her arrest and detention at the Jail under the Fourth Amendment, Eighth Amendment, and Fourteenth Amendment against Sheriff Hagwood and Officer Luntey, and (2) municipal liability under *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978) against the County of Plumas. (*Id.*) On January 14, 2022, the Court dismissed all claims against the County of Plumas and Sheriff Hagwood. (ECF No. 47.) Thus, the only remaining defendants are Officer Luntey and the Doe Defendants.

Officer Luntey moved for summary judgment on May 7, 2024. (Mot. Summ. J. ("MSJ") (ECF No. 59).) The Court held a hearing on August 22, 2024, with James Walter appearing for Officer Luntey, and Larry Baumbach appearing for Plaintiff. The Court dismissed Plaintiff's Eighth and Fourteenth Amendment claims and ordered Plaintiff's remaining Fourth Amendment claim be submitted. (ECF No. 69.)

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted when the evidence shows that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). The "threshold inquiry" is whether there are any

---

³ "It is unlawful for a person who is under the influence of any alcoholic beverage to drive a vehicle." Cal. Veh. Code § 23152(a).

4

factual issues that could reasonably be resolved in favor of either party, or conversely, whether the facts are so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

In a summary judgment motion, the moving party must inform the court of the basis for the motion and identify the portion of the record which they believe demonstrates the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets its initial burden, the burden then shifts to the opposing party, who must establish that there is a genuine issue of material fact.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986).  Summary judgment is mandated where the nonmoving party fails to "set forth specific facts showing that there remains a genuine issue for trial" and evidence "significantly probative as to any [material] fact claimed to be disputed."  *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983) (internal quotation marks omitted).  If the evidence presented by the nonmoving party is "merely colorable, . . . or is not sufficiently probative, . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (internal citations omitted).

**DISCUSSION**

Plaintiff alleges that Officer Luntey's actions deprived her of (1) her right against unreasonable search and seizure under the Fourth and Fourteenth Amendments; (2) her right to be free of cruel and unusual punishment under the Eighth and Fourteenth Amendment; and (3) her right not to be deprived of life, liberty, or property without due process of law and the right to equal protection of the law under the Fourteenth Amendment. (ECF No. 35 ¶ 13.)  Although Plaintiff does not say so, the Court presumes that Plaintiff brings this action under 42 U.S.C. § 1983.  The elements of a section 1983 claim are: "(1) a person acting under color of State law; (2) subjects or causes to be subjected to deprivation; (3) a U.S. citizen or person in the

jurisdiction of the United States; (4) of a right, privilege, or immunity secured by the Constitution and laws." *Chaudhry v. Aragón*, 68 F.4th 1161, 1169 & n.9 (9th Cir. 2023).

The Court dismissed Plaintiff's Eighth and Fourteenth Amendment claims at the August 22, 2024, hearing. (ECF No. 69.) Accordingly, only Plaintiff's Fourth Amendment claim remains.

## I. Plaintiff's Fourth Amendment Claim

Under the Fourth Amendment, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. Under Fourth Amendment law, a traffic stop constitutes a seizure; therefore, an officer must have reasonable suspicion a motorist is violating the law before detaining them. *Bingham v. City of Manhattan Beach*, 341 F.3d 939, 948 (9th Cir. 2003). Reasonable suspicion "exists when an officer is aware of specific, articulable facts which, when considered with objective and reasonable inferences, form a basis for particularized suspicion." *United States v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000) (en banc).

Plaintiff argues Officer Luntey stopped her vehicle without reasonable suspicion because Officer Luntey followed her for less than 1/8 of a mile before pulling her over and did not observe her committing any traffic infractions. (Opp'n MSJ (ECF No. 62) at 2–4.) To refute this, Officer Luntey points to the MVARS video of the traffic stop which he argues shows that he followed Plaintiff for at least two minutes, or about two miles, before pulling her over, and that Plaintiff was weaving across her lane and touching or crossing the double yellow line multiple times. (MVARS Video at 00:01–02:00.) Officer Luntey testified that this pattern of driving prompted him to pull Plaintiff over as he observed "one initial violation" and then "four more times that she went onto or over the double yellow line." (Luntey Dep. at 20:3–24:2.) Officer Luntey argues this driving pattern provided him with reasonable suspicion to pull Plaintiff over under California Vehicle Code §§ 21651(a) (driving over double yellow line that divides lanes of travel) and 21658(a) (failure to drive within lane of travel and lane

weaving). *See Whren v. United States*, 517 U.S. 806 (1996) (a vehicle detention is reasonable based on a traffic violation alone).

The Court will deny summary judgment on this claim. As the Supreme Court has explained, when "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Thus, summary judgment is appropriate where video evidence blatantly contradicts a non-moving party's version of events. *Id.* at 378–81. The Court has reviewed the MVARS video and finds that it blatantly contradicts Plaintiff's testimony that Officer Luntey pulled her over after only 1/8 of a mile. The video clearly shows Officer Luntey followed Plaintiff's vehicle for about two minutes before pulling her over. Assuming the Parties were travelling at around 55 miles per hour during those two minutes, they would have driven almost two miles. (Luntey Dep. at 31:9–11 (speed limit on the road was 55 miles per hour).) Thus, there is no reasonable dispute that Officer Luntey pursued Plaintiff for well over 1/8 of a mile before pulling her over.

However, the MVARS video does not clearly show that Plaintiff was weaving and touching or crossing the double yellow line before she was pulled over as the video was taken at night, is dark, and is grainy. While there are several instances where it appears to the Court that Plaintiff may have committed traffic infractions that supported the stop of the vehicle, a reasonable juror could watch the video and disagree. Further, while the video clearly contradicts Plaintiff's statement that Officer Luntey pursued her less than 1/8 of a mile, courts may not discount the entirety of a party's testimony if only a portion is blatantly contradicted by the evidence. *See Hughes v. Rodriguez*, 31 F.4th 1211, 1218–20 (9th Cir. 2022) (holding that a district court erred in disregarding the entirety of plaintiff's testimony concerning three key moments during an arrest when video footage and audio only blatantly contradicted plaintiff's testimony concerning two of those moments but not the third). Thus, the

Court will not discredit Plaintiff's testimony that she did not touch or cross the double yellow lines based on her incorrect testimony concerning the length of the pursuit alone.

Accordingly, it is a disputed question of fact whether Plaintiff committed the alleged traffic infractions and, thus, whether Officer Luntey had reasonable suspicion to pull her over. The Court will deny summary judgment on Plaintiff's Fourth Amendment claim.

## II. Doe Defendants

Plaintiff named Doe Defendants in her Second Amended Complaint. Generally, if defendants' identities are unknown when a complaint is filed, plaintiffs have an opportunity through discovery to identify them. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). But courts will dismiss such unnamed defendants if discovery clearly would not uncover their identities or if the complaint would clearly be dismissed on other grounds. *Id.* The federal rules also provide for dismissing unnamed defendants that, absent good cause, are not served within 90 days of the complaint. *See* Fed. R. Civ. P. 4(m).

Plaintiff has had ample opportunity to discover the identities of the Doe Defendants but has failed to do so. Well over 90 days have elapsed since the filing of Plaintiff's Second Amended Complaint, yet Plaintiff has failed to identify or serve the Doe Defendants and has shown no good cause for this failure.

Accordingly, the Court will dismiss the Doe Defendants without prejudice.

////
////
////
////
////
////
////

**CONCLUSION**

In accordance with the above, IT IS HEREBY ORDERED Defendant's Motion for Summary Judgment (ECF No. 59) is GRANTED as to Plaintiff's Eighth Amendment and Fourteenth Amendment claims and DENIED as to Plaintiff's Fourth Amendment claim. The Court also DISMISSES all claims against Doe Defendants 1–50 without prejudice.

IT IS SO ORDERED.

Dated:  **September 12, 2024**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC4 – Loescher19cv1984.MSJ